## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-22427-BLOOM/Torres

PRIME PROPERTY & CASUALTY
INSURANCE INC.,

      Plaintiff,

v.

OLD REPUBLIC INSURANCE
COMPANY *and* PENSKE TRUCK
LEASING CO., L.P.,

      Defendants.

_____/

## ORDER ON PARTIES'
## MOTIONS FOR SUMMARY JUDGMENT

    **THIS CAUSE** is before the Court upon the Parties' Motions for Summary Judgment.

Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. [22], was filed on

December 28, 2023. Defendants filed a Combined Response and a Cross-Motion for Summary

Judgment ("Defendants' Motion"), ECF Nos. [26], [28], to which Plaintiff filed a Combined

Reply and Response, ECF No. [34]. Defendants thereafter filed a Reply in Support of their

Cross-Motion for Summary Judgment, ECF No. [39]. The Court has reviewed the Motions, all

opposing and supporting submissions,[1] the record in the case, the applicable law, and is

otherwise fully advised. For the reasons set forth below, Defendants' Cross-Motion for Summary

Judgment is granted in part and denied in part, and Plaintiff's Motion for Summary Judgment is

---

[1] Plaintiff filed a Statement of Material Facts ("SMF") in support of its Motion for Summary Judgment, ECF No. [21]. Defendants filed a Statement of Material Facts in Support of their Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("DSMF"), ECF No. [27], and a Response to Plaintiff's Statement of Material Facts ("Response to SMF"), ECF No. [25].

denied.

## I.     BACKGROUND

### A.     Material Facts

In its Complaint, Plaintiff Prime Property & Casualty Insurance Inc. ("Prime") asserts two claims against Defendants Old Republic Insurance Company ("Old Republic") and Penske Truck Leasing, Co., L.P. ("Penske"): (1) Count I seeks a declaratory judgment that Penske, the lessor of the vehicle at issue, has the burden to provide primary liability coverage to the vehicle lessee FTL via its insurer Old Republic; and (2) Count II  seeks equitable subrogation from Old Republic, specifically indemnification, defense costs, and expenses for FTL and Holguin in the underlying state action. *See* ECF No. [1-3]. Old Republic and Penske (jointly, "Defendants") assert a Counterclaim against Prime seeking declaratory judgment as to the following:

A.     FTL Hub and Holguin are insureds under the Prime Policy;
B.     Prime has a duty to defend and indemnify Holguin and FTL Hub from the claims asserted in the underlying action;
C.      FTL Hub and Holguin are not insureds under the Old Republic Policy;
D.     Penske had no duty to maintain financial responsibility for the subject vehicle because at the time of the accident, the vehicle was subject to a long-term lease meeting the provisions of Fla. Stat. §324.021 (9)(b)(1); and
E.     Old Republic and Penske have no duty to defend or indemnify FTL Hub and Holguin from the claims asserted in the underlying action.

ECF No. [4] at 33.

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted. On August 17, 2020, Penske and non-party FTL Hub Inc. ("FTL") entered into a Vehicle Lease Service Agreement ("Lease Agreement") in which lessor Penske thereafter leased a 2022 Freightliner tractor to lessee FTL ("2022 Freightliner"). SMF, ECF No. [21] ¶ 1; Lease Agreement, ECF No. [27-1]. Both Penske and FTL independently sought insurance coverage:  Prime issued a commercial auto insurance policy

to FTL, policy number PC21112002, with effective dates ranging from December 1, 2021 to December 1, 2022. Prime Policy, ECF No. [27-2] at 1. The Prime Policy had a combined single limit of $1 million. *Id.* at 2. Old Republic issued a commercial insurance policy to Penske with effective dates of January 1, 2021 to January 1, 2024. Old Republic Policy, ECF No. [27-3] at 1. The Old Republic Policy also had a combined single limit of $1 million. *Id.* at 7.

On September 1, 2022, the 2022 Freightliner was involved in an accident. The driver of the 2022 Freightliner was Blanca Maria Holguin and the other driver involved in the accident was Fabian Carl Bryan. Bryan and his wife, Judith Jackson, filed suit against FTL and Holguin in the 11th Judicial Circuit in and for Miami-Dade County. *See Bryan, et al., v. Holguin, et al.*, No. 2023-013684-CA-01 (Fla. Cir. Ct. filed Mar. 23, 2023) (the "Bryan Action"). Prime retained counsel to defend FTL and Holguin. ECF No. [21] ¶ 12. On October 17, 2022, Prime tendered the duties to defend and indemnify FTL and Holguin to Old Republic and Penske. ECF No. [1-3] ¶ 15. It argued that the Lease Agreement failed to shift the burden of providing primary liability coverage from Penske to FTL because the Lease Agreement did not contain the necessary language to do so under Florida Statutes, § 627.7263. ECF No. [21] ¶ 13. Penske and Old Republic did not respond to the tender. *Id.* at ¶ 14. Plaintiff subsequently brought this action against Penske and Old Republic in the 11th Judicial Circuit in and for Miami-Dade County, Florida, seeking declaratory judgment and damages through equitable subrogation. Defendants removed this action to this Court on June 29, 2023. ECF No. [1].

Plaintiff and Defendants have each moved for summary judgment. In Plaintiff's Motion, Prime seeks summary judgments on both counts of the Complaint, and claims it is entitled to a declaratory judgment and equitable subrogation because the Lease Agreement between Penske and FTL failed to shift the burden of carrying primary liability insurance coverage from lessor Penske to lessee FTL. ECF No. [22]. In Defendants' Motion, Old Republic and Penske seek

summary judgment on both counts of the Complaint and on their Counterclaim, ECF Nos. [26],

[28] at 1,  including an order from this Court that:

A. FTL Hub and Holguin are insureds under the Prime Policy;

B. Prime has a duty to defend and indemnify Holguin and FTL Hub from the claims asserted in *Bryan, et al., v. Holguin, et al*., Circuit Court for Miami-Dade County, Florida, Case No. 2023-013684-CA-01 (the "Bryan Action");

C. FTL Hub and Holguin are not insureds under the Old Republic Policy;

D. Old Republic and Penske have no duty to defend or indemnify FTL Hub and/or Holguin from the claims asserted in the Bryan Action; and
…

F. If the Court finds Old Republic has a primary duty to defend and indemnify FTL Hub and/or Holguin in the Bryan Action, Defendants seek this Court's Order that its primary obligation is only to the minimum limit of the Florida Motor Vehicle Financial Responsibility Law, Fla. Stat. §324.021, et seq. In the alternative, if the Court finds that Old Republic has a duty to defend and indemnify FTL or Holguin, Defendants seek an order that its primary obligation is only to the minimum limit of the Florida Motor Vehicle Financial Responsibility Law, Florida Statute 324.021, *et seq*.

ECF No. [26] at 2.

Relevant to the Motions are the Lease Agreement between Penske and FTL, the Policy

between Old Republic and Penske, and the Policy between Prime and FTL, detailed below.

### i. The Lease Agreement between Penske and FTL

The Lease Agreement between Penske and FTL states:

### 9. PHYSICAL DAMAGE AND LIABILITY COVERAGE

…

**c. Liability Coverage**. Customer shall at its sole cost procure and maintain liability coverage for each Vehicle, protecting Customer and Penske and its partners and their respective agents, servants and employees, in accordance with the standard provisions of a basic automobile liability insurance policy as required in each jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising out of the  ownership, maintenance, use and operation of each Vehicle with limits of at least a combined single limit of One Million Dollars ($1,000,000.00) per occurrence. Such coverage shall be primary and not excess or contributory and shall be in conformity with the motor vehicle minimum financial responsibility laws as

respects "Uninsured Motorist", "No-Fault", or other optional coverages. Non-trucking, bobtail or un-laden coverage will not, individually and by themselves, satisfy these requirements. Such coverage shall (i) list Customer as named insured, (ii) be endorsed to include Penske as an additional insured; and (iii) be in a form acceptable to Penske.

**d. Certificates of Insurance**. Prior to delivery of any Vehicle, Customer shall deliver to Penske certificates of insurance showing the coverages required pursuant to paragraphs a and c of this Article 9. Each insurer shall agree, by endorsement upon the policy issued by it or by an independent document provided to Penske, that it shall give Penske thirty (30) days' prior written notice of the effective date of any cancellation or material alteration of such policy, and that such notice shall be sent by registered or certified mail postage prepaid, return receipt requested, to Penske Truck Leasing Co., L.P., 2675 Morgantown Road, Reading, PA 19607, Attention: Insurance Risk Management Department.

Defendants' Statement of Material Facts ("DSMF"), ECF No. [27] at ¶ 10 (Section 9.c-d of Lease Agreement). The Lease Agreement makes clear that "Customer" is "FTL Hub Inc." *Id.* at ¶ 10. The Lease Agreement specifies that:

**10. INDEMNIFICATION.**

FOR LIABILITY IN EXCESS OF THE LIMITS OF THE INSURANCE REQUIRED IN ARTICLE 9 ABOVE, OR IN THE EVENT THERE IS NO INSURANCE COVERAGE OR CUSTOMER FAILS TO PROVIDE A DEFENSE, CUSTOMER SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS PENSKE AND ITS PARTNERS AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS, SERVANTS, REPRESENTATIVES AND EMPLOYEES FROM ANY AND ALL CLAIMS, SUITS, COSTS, LOSSES, DAMAGES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND LIABILITIES (EVEN IF PENSKE IS CLAIMED TO HAVE BEEN OR IS PROVEN TO BE NEGLIGENT) ARISING OUT OF OR RELATED TO: (A) CUSTOMER'S FAILURE TO COMPLY WITH ITS OBLIGATIONS TO GOVERNMENTAL BODIES HAVING JURISDICTION OVER CUSTOMER AND THE VEHICLES, (B) CUSTOMER'S FAILURE TO COMPLY WITH THE TERMS OF THIS VLSA, (C) THE OWNERSHIP, USE, SELECTION, POSSESSION, MAINTENANCE, AND/OR OPERATION OF ANY VEHICLE, (D) THE COLLECTION OR DISSEMINATION OF THE "INFORMATION", (E) ANY LIABILITY IMPOSED UPON OR ASSUMED BY CUSTOMER UNDER ANY WORKER'S COMPENSATION ACT, PLAN OR CONTRACT AND ANY AND ALL INJURIES (INCLUDING DEATH) OR PROPERTY DAMAGE SUSTAINED BY CUSTOMER OR ANY DRIVER, AGENT, SERVANT OR EMPLOYEE OF CUSTOMER, OR (F) LOSS OR DAMAGE INCURRED BY PENSKE FROM CUSTOMER'S USE OF A VEHICLE OR TRAILER NOT

OWNED OR INSURED BY PENSKE, REGARDLESS OF PENSKE'S OBLIGATIONS IMPOSED BY THE INSURANCE PROVISIONS OF ANY FEDERAL OR STATE AGENCY. CUSTOMER'S OBLIGATIONS UNDER THIS ARTICLE 10 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS VLSA

ECF No. [27-1] ¶ 10 (section 10 of original Lease Agreement).

It is undisputed that the Lease Agreement between Penske and FTL does not include the language stated below, which is required by Florida Statutes "if the lessee's coverage is to be primary, the rental or lease agreement must contain the following language, in at least 10-point type:"

The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by ss. 324.021(7) and 627.736, Florida Statutes.

Fla. Stat. § 627.7263(2). Had this language been present, Florida Statutes, § 627.7263(1) clarifies that:

The valid and collectible liability insurance or personal injury protection insurance providing coverage for the lessor of a motor vehicle for rent or lease is primary unless otherwise stated in at least 10-point type on the face of the rental or lease agreement. Such insurance is primary for the limits of liability and personal injury protection coverage as required by ss. 324.021(7) and 627.736.

Fla. Stat. § 627.7263(1).

### ii. Old Republic's Policy with Penske

Old Republic Policy's with Penske states:

**"SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

**1. Who Is an Insured**

The following are "insureds":

a.     You for any covered "auto".

b.      Anyone else while using with your permission a covered "auto" you own, hire, or borrow…" SMF, ECF No. [21] ¶ 2 (Section II.A.I.a-b of Old Republic Policy). A later endorsement changes the "Who Is an Insured" section by adding the following: "Both lesses and rentees of covered 'autos' are 'insureds', but only to the extent and up to the limits of liability (insurance) agreed to under a contractual agreement with the Named Insured." *Id.* (Section II.A.I.d of Old Republic Policy).

In addition, the policy further provides: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us' and 'our' refer to the company providing this insurance." *Id.*

A further endorsement, entitled **Florida Changes**, amends the policy as follows:

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
…
D. The General Conditions are amended as follows:
1. The following is added to the Other Insurance Condition in the Auto Dealers and Business Auto Coverage Forms, and Other Insurance – Primary and Excess Provisions Condition in the Motor Carrier Coverage Form:
a. When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:
(1) One provides coverage to a lessor of "autos" for rent or lease; and
(2) The other provides coverage to a person not described in Paragraph D.1.a.(1); then the Coverage Form or policy issued to the lessor described in Paragraph D.1.a.(1) is excess over any insurance available to a person described in D.1.a.(2) if the face of the lease or rental agreement contains, in at least 10 points type, the following language:
> The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

*Id.*

### iii. Prime's Policy with FTL

The relevant portions of the general conditions of Prime's Policy with FTL

provide as follows:

> **BUSINESS AUTO COVERAGE FORM**
> ….
> **SECTION II — COVERED AUTOS LIABILITY COVERAGE**
>
> **A.  Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
> [. . .]
>
> 1.  Who Is An Insured
>
>      The following are "insureds":
>      a. You for any covered "auto".
>      b. Anyone else while using with your permission a covered "auto" […]

DSMF, ECF No. [27] ¶ 4 (Section II.A.1.a-b of Prime Policy). The 2022 Freightliner heavy truck/trailer combo VIN 3AKJHHDR1NSNA4821 at issue in the action is included as Auto No. 6 on the Schedule of Covered Autos in the Prime Policy. *Id.* at ¶ 6.

A Florida Changes Endorsement amended the previous general conditions of Prime's Policy:

> D. The **General Conditions** are amended as follows: The following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms, and Other Insurance — Primary And Excess Provisions Condition in the Motor Carrier Coverage Form:
>
> a. When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:
>
> (1) One provides coverage to a lessor of "autos" for rent or lease; and
>
> (2) The other provides coverage to a person not described in Paragraph D.1.a.(1):
>
> then the Coverage Form or policy issued to the lessor described in Paragraph D.1.a.(1) is excess over any insurance available to a person described in D.1.a.(2) if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

> The valid and collectible liability insurance and personal injury
> protection insurance of any authorized rental or leasing driver is
> primary for the limits of liability and personal injury protection
> coverage required by FLA. STAT. SECTION 324.021(7) and
> FLA. STAT. SECTION 627.736.

SMF, ECF No. [21] ¶ 4 (Section D of Prime Policy).

An additional endorsement (Florida Personal Injury Protection) states:

**6. Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is
injured while "occupying", or through being struck by, a "motor vehicle" rented
or leased under a rental or lease agreement which does not specify otherwise in
language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point
type on the face of the agreement, the personal injury protection benefits available
under the Florida Motor Vehicle No-fault Law and afforded under the lessor's
policy shall be primary.

Prime Policy, ECF No. [27-2] at 45, ¶ 6.

## II.   LEGAL STANDARD

### A.  Summary Judgment

The court may grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in

the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P.

56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the

governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-

moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th

Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue

of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is

satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical

doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*, 695 F.2d at 1296.

### B. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The act "vests district courts with discretion to dismiss declaratory suits when, in their best judgment, the costs outweigh the benefits." *James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1059 (11th Cir. 2022). This is because the Act's use of "may" makes an explicit "textual commitment

to discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. Requests for declaratory judgment are often used in the insurance context, as "a declaratory suit allows the insurance company to resolve its liability without waiting for every individual injured party to sue the insured." *James River Ins. Co.*, 34 F.4th at 1058.

### III. DISCUSSION

#### A. Declaratory Judgment: Count I and Counterclaim

##### 1. Choice of Law

Plaintiff argues that the Court should apply Florida law to determine whether Prime or Old Republic's policies apply, given that federal jurisdiction comes from diversity jurisdiction. ECF No. [22] at 3. Under Florida law, the law of where the contract was executed should control. As such, Plaintiff applies Pennsylvania law to the Old Republic Policy, which it finds substantially similar to Florida law when it comes to contract interpretation. ECF No. [22] at 4-5. Defendants do not dispute Plaintiff's choice-of-law and apply Florida and Pennsylvania law in their analysis. *See*, e.g., ECF No. [28] at 5.

"Under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64 … (1938), a federal court in a diversity action must apply the controlling substantive law of the state." *Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 (11th Cir. 1983). The Court's jurisdiction of this action is based upon diversity of citizenship, 28 U.S.C. § 1332, and therefore, Florida law controls. *See Broyles v. Bayless*, 878 F.2d 1400, 1402 (11th Cir. 1989). The interpretation of an insurance policy is a question of law. *See Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). When interpreting insurance coverage disputes, Florida courts apply the *lex loci contractus* doctrine. That doctrine, as applied to insurance contracts, provides that the law of the

jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). "In the context of insurance contracts, at least, one more requirement also must be met: the insurer must be on reasonable notice that the insured is a Florida citizen." *Id.* at 1165.

The Court applies the law of the jurisdiction where the contract was executed. The insured, FTL, is located in Florida. ECF No. [27-2] at 1. Old Republic's Policy with Penske was executed in Pennsylvania. ECF Nos. [27-3] at 6, [22] at 5. Prime's Policy with FTL was executed in Florida. ECF Nos. [27-2] at 1, [22] at 4. Accordingly, the Court applies Pennsylvania law to Old Republic's Policy and Florida law to Prime's Policy.

### 2.      FTL and Holguin's Coverage under Old Republic's Policy

The Court begins with the question of whether or not FTL and the 2022 Freightliner's driver, Holguin, are covered under Old Republic's Policy, which determines the application of Florida Statutes, § 627.7263. Section 627.7263 details the requirements for the shift of primary coverage between lessor and lessee. Plaintiff argues that FTL and Holguin are permissive insureds under Penske's Policy with Old Republic. ECF No. [34] at 1-2. Defendants argue that Old Republic's "Who Is an Insured" Policy language establishes that FTL is not insured under Old Republic's Policy because it makes a lessee an insured, "only to the extent and up to the limits of liability (insurance) agreed to under a contractual agreement with [Penske]." ECF No. [39] at 2; DSMF, ECF No. [27] ¶ 15 (II.B.1.d). Because there is no promise by Penske to insure FTL in the Lease Agreement, Defendants argue that FTL is not an insured under the Old Republic Policy. ECF No. [39] at 2. Any other reading would render the clause superfluous. *Id.*

The Court applies Pennsylvania law to interpret the Old Republic policy. In doing so, the Court finds that FTL and Holguin are not permissive insured under Penske's Policy with Old

Republic. Old Republic's Policy states in its "Who is Insured" section that: "The following are 'insureds': … Anyone else while using with your permission a covered 'auto' you own, hire, or borrow…" SMF, ECF No. [21] ¶ 2 (Section II.A.I.b of Old Republic Policy). The Old Republic Policy defines "you" as "…the Named Insured shown in the Declarations." *Id.*; Old Republic Policy, Business Auto Coverage Form, ECF No. [27-3] at 37. The Named Insured is Penske. ECF No. [27] ¶ 16; Old Republic Policy, Named Insured Endorsement, ECF No. [27-3] at 23.

"Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 87 (2002).[2] When doing so, the Court finds that FTL and Holguin meet the threshold definition of "insured" under the Old Republic Policy because Penske leased the 2022 Freightliner to FTL and Holguin was driving it on behalf of FTL. FTL and Holguin were therefore using a Penske vehicle with Penske's permission, which initially would make them an "insured" under Old Republic's Policy with Penske. The Second District Court of Appeals came to a similar conclusion in *Patterson v. FirstLease*, albeit when applying Florida law. 109 So. 3d 226, 228 (Fla. 2nd DCA 2012). There, the court found that the lessee and the driver of a truck were insured under the lessor's insurance policy, which provided that "anyone else while using with your permission a covered auto you own, hire or borrow" was insured. *Id.*

However, Section 1.d limits Old Republic's coverage to the extent/limits agreed to by the lessee and the lessor (Named Insured). Section 1.d of Old Republic's Policy states: "Both lessees and rentees of covered 'autos' are 'insureds', but only to the extent and up to the limits of liability insurance agreed to under a contractual agreement with the Named Insured." ECF No. [27] ¶ 15 (Section 1.d of Policy). A clear reading is that Old Republic's coverage responsibility

---

[2] The Court applies Pennsylvania law to the construction of Old Republic's Policy with Penske.

toward FTL is only to the extent and up to the limits of the liability insurance Penske (Named

Insured) agreed to under its contract with FTL.

Here, lessee FTL has a contractual agreement — the Lease Agreement — with lessor

Penske. This Lease Agreement states that FTL had the *sole* responsibility to procure liability

insurance for itself and for Penske. It states:

> Customer shall at its sole cost procure and maintain liability coverage for each
> Vehicle, protecting Customer and Penske and its partners and their respective
> agents, servants and employees, in accordance with the standard provisions of a
> basic automobile liability insurance policy as required in each jurisdiction in
> which the Vehicle is operated, against liability for bodily injury, including death,
> and property damage arising out of the ownership, maintenance, use and
> operation of each Vehicle with limits of at least a combined single limit of One
> Million Dollars ($1,000,000.00) per occurrence.

ECF No. [27] ¶ 10 (section 9.c of the Lease Agreement).

Penske had explicitly disclaimed responsibility to provide coverage to FTL. Accordingly,

the "extent" and "the limits of liability (insurance) agreed to under a contractual agreement with

the Named Insured" for which Old Republic is liable to FTL and Holguin is zero. The Lease

Agreement between Penske and FTL does not make Penske responsible for providing insurance

to FTL, and instead makes FTL responsible for obtaining its own liability insurance, which FTL

did obtain, through Prime.

The Court must read Section 1.b, which states that "[t]he following are 'insureds': …

Anyone else while using with your permission a covered 'auto' you own, hire, or borrow…" and

Section 1.d, which states that "[b]oth lessees and rentees of covered 'autos' are 'insureds', but

only to the extent and up to the limits of liability insurance agreed to under a contractual

agreement with the Named Insured[,]" together. Reading both sections jointly, FTL is not

insured by Old Republic's Policy. "Our rules of construction do not permit 'word[s] in a contract

to be treated as surplusage ... if any reasonable meaning consistent with the other parts can be

given to it.' *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 631 (Pa. Super. Ct. 1998) (citing *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 199 A.2d 540, 544 (1964)). "General rules of insurance contract construction require us to read the policy as a whole and construe it according to its plain meaning." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (applying Pennsylvania law). Here, the Coverage section of Old Republic's Policy states that "anyone else while using with [Penske's] permission a covered 'auto' [it] own[s], hire[s], or borrow[s]…" is insured under Old Republic's Policy with Penske. ECF No. [27-3] at 38 (Section II.A.1.b of Policy). The "Who is an Insured" endorsement amends the coverage section to add that a lessee is an insured, "only to the extent and up to the limits of liability (insurance) agreed to under a contractual agreement with the Named Insured [Penske]." Old Republic Policy, ECF No. [27-3] at 57, ¶ II.A.1.d.

Reading Sections 1.b and 1.d together, FTL and Penske agreed that FTL is not insured under Penske's Policy with Old Republic, but is responsible for obtaining its own liability coverage. Accordingly, FTL is not covered by Old Republic's Policy with Penske.

### 3.    Priority of Coverage between Old Republic and Prime

The Court next considers whether the provision of Florida Statutes, § 627.7263, regulating the burden shift of primary coverage between lessor and lessee applies, where lessee is not an insured under lessor's insurance. The Parties agree that the Lease Agreement between Penske and FTL does not include the statutory language of § 627.7263(2), which requires that any rental or lease agreement contain the following language, in at least 10-point-type, if "the lessee's coverage is to be primary[:]"

> The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by ss. 324.021(7) and 627.736, Florida Statutes.

Fla. Stat. § 627.7263(2). In the absence of that language, Prime argues that Penske did not shift the burden of obtaining primary insurance coverage onto the lessee, FTL. ECF No. [34] at 2. Therefore, Prime asserts that Penske kept the burden of obtaining primary insurance coverage onto itself and Penske's insurance with Old Republic should cover the incident under the terms of Old Republic's Policy of "Who Is an Insured Endorsement." *Id.*

Old Republic responds that Fla. Stat. § 627.7263 does not create insurance coverage where there is none and does not apply to the incident. ECF No. [29] at 4, 14. Any other reading of § 627.7263 would eviscerate the long-term lessor provision of the Florida Motor Vehicle Financial Responsibility Law ("FMVFRL"), which does not require long-term lessors of vehicles leased for more than one year to insure the vehicle they own. ECF No. [28] at 6-7, 15-16.

Fla. Stat. § 627.7263 states:

(1) The valid and collectible liability insurance or personal injury protection insurance providing coverage for the lessor of a motor vehicle for rent or lease is primary unless otherwise stated in at least 10-point type on the face of the rental or lease agreement. Such insurance is primary for the limits of liability and personal injury protection coverage as required by ss. 324.021(7) and 627.736.
(2)  If the lessee's coverage is to be primary, the rental or lease agreement must contain the following language, in at least 10-point type:
> "The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by ss. 324.021(7) and 627.736, Florida Statutes."

Fla. Stat. § 627.7263.

"The purpose of section 627.7263(1) is to permit the lessor of an automobile to shift primary liability for the leased vehicle to the lessee's insurance carrier, thus rendering its own insurance secondary." *McCue v. Diversified Servs., Inc.*, 622 So. 2d 1372, 1374 (Fla. 4th DCA 1993). However, "[t]he coverage shifting language of the rental car agreement cannot serve to create coverage where none otherwise exists." *Direct Gen. Ins. Co. v. Vreeman*, 943 So. 2d 914, 916 (Fla. 1st DCA 2006). Section 627.7263 applies when the lessee and lessor's insurance both

cover the incident at issue, in which case the statute determines which coverage is primary.

The Court has determined that FTL and Holguin are not insured under Old Republic's Policy with Penske. There is accordingly no "collectible liability insurance" for FTL or Holguin pursuant to § 627.7263(1). It logically follows that there is no primary liability for Penske to shift to FTL under § 627.7263. The Court need not determine whose coverage is primary, and whose is excess, when the lessee is only covered by its own insurance and not by lessor's insurance.

A decision by Florida's First District Court of Appeals is instructive here. In *Direct General Insurance Company v. Vreeman*, Direct General insured driver Vreeman and additional drivers Monsanto and her daughter. 943 So. 2d at 916. Monsanto rented a car from Enterprise and named Leandry as an additional driver. When Leandry got into an accident, Direct General sought declaratory judgment to determine whether its coverage or Enterprise's coverage was primary. The First District Court of Appeals first looked at whether Direct General insured Leandry. The court found that Direct General's policy did not cover Leandry under its terms. The court then turned to § 627.7263. There, Enterprise's rental agreement contained the statutory language that shifted primary coverage to the lessee. Enterprise had argued that according to § 627.7263's burden-shifting language, any "valid and collectible liability insurance or personal injury protection insurance of any authorized rental or leasing driver" applied and the insurance of the lessee was primary. *Direct Gen.*, 943 So. 2d at 916. However, only one lessee of Enterprise's car, Monsanto, was insured by Direct General. Leandry was *not* insured under Direct General's insurance. Therefore, Direct General had no obligation to insure Leandry after the accident. *Id.* at 916. The court explained that "the coverage shifting language of the rental car agreement cannot serve to create coverage where none otherwise exists." *Id.* at 916. Because Direct General's "policy never extended 'valid and collectible' PIP coverage to the Leandrys[,]"

Direct General's insurance coverage could not be primary. *Id.* at 916.[3]

Applying the logic of the First District Court of Appeals, Old Republic is not liable under § 627.7263 when Old Republic never extended coverage to FTL and Holguin. Since Old Republic's Policy did not cover FTL and Holguin, "[a]bsent a statutory requirement, the Court cannot create coverage where none exists." *Allstate Fire & Cas. Ins. Co. v. Paolino*, No. 14-61934-CIV, 2015 WL 2070335, at *8 (S.D. Fla. May 4, 2015). That reading is consistent with the purpose of § 627.7263(1), which "is to permit the lessor of an automobile to shift primary liability for the leased vehicle to the lessee's insurance carrier, thus rendering its own insurance secondary" and not to create additional liability for the lessor. *McCue,* 622 So.2d at 1374. Unlike in *Direct General*, here it is the lessor's insurance that does not cover the incident at issue, and the clause shifting primary liability from lessor to lessee is absent from the Policy. But the holding of *Direct General* applies. Section 627.7263 does not apply in the instant case where FTL and Holguin are not insured by Penske's Policy. Section 627.7263 does not create any primary coverage liability for Old Republic.

The Court's determination is consistent with the reasoning of the Fourth District Court of Appeals in *McCue v. Diversified Services*. In *McCue*, the car rental agreement between lessor and lessee contained the statutory language of § 627.7263(2). 622 So. 2d at 1374. However, the lessee did not obtain insurance. The court held that "the burden of primary coverage [wa]s not shifted under section 627.7263 because the lessee ha[d] no primary insurance, [so] the lessor remain[ed] responsible for providing primary insurance coverage." *Id*. This result was again

---

[3] Under *Pardo v. State,* 596 So.2d 665 (Fla.1992), in the absence of conflicting decisions, a decision of the district court of appeal is binding on all Florida trial courts. The Court does not find conflict with *Direct General* in other district court of appeals, nor do parties point to such conflicting decisions. Instead, at least another district court of appeal quoted *Direct General* approvingly. The Fourth District Court of Appeal quoted *Direct General* and opined that it "considered, and rejected, [lessor's]'s 'statutory construction' argument that section 627.7263 requires [lessee's insurer] to provide PIP coverage …" *Shivers v. Enter. Leasing Co.*, 950 So. 2d 494, 495 (Fla. 4th DCA 2007).

contingent on the fact that the lessee was covered by lessor's insurance. Where the lessee is not covered by the lessor's insurance in the first place, § 627.7263's shift of primary coverage responsibility does not apply.[4]

None of the cases cited by Prime belie this proposition, which Prime also agrees with in its Response.[5] ECF No. [34] at 1. Prime relies on *Patterson v. FirstLease, Inc.*, where the court found that a lease agreement that is statutorily deficient under Florida Statutes, § 627.7263 fails to shift the primary insurance coverage onto the lessee. 109 So. 3d 226 (Fla. 2nd DCA 2012); *see also* ECF No. [22] at 6-7. There, the lessor's insurance remained primary. In *Patterson*, whether or not the lessee's insurance was primary was relevant in order to determine whether or not lessee Drop Ship and driver Gutierrez were covered or excluded as a "covered auto" under lessor's insurance, and so whether the plaintiff could recover from lessor's insurance. *Id.* at 228-29. However, unlike here, both the lessor and the lessee's insurance in *Patterson* covered the lessee and, as a result, § 627.7263 applied: without the required language of § 627.7263(2), a lessor failed to shift the responsibility to provide primary coverage onto the lessee. *Id.* at 229. As such, the lessor's insurance was primary. *Id.*

Accordingly, Florida Statutes, § 627.7263 does not change the underlying fact that FTL's insurance coverage under the Prime Policy is primary as to the 2022 Freightliner, and FTL is not

---

[4] Moreover, the *McCue* court specified that "[a] lessor and lessee are free to contract between themselves for any additional responsibilities, *so long as* the requirements of the statute will be met." *McCue*, 622 So. 2d at 1374 (emphasis added); *see also Ins. Co. of N. Am. v. Avis Rent-A-Car Sys., Inc.*, 348 So. 2d 1149, 1154 (Fla. 1977) ("The parties were free to contract between themselves to shift the burden of loss so long as they met the requirements of law, and in this case there is no suggestion that those requirements were not met."). Here, the lessor had no statutory obligation to shift the responsibility to provide primary coverage of a vehicle onto the lessee for a vehicle it did not cover. Both lessor and lessee complied with the statute. Therefore, Penske and FTL were both free to contract that FTL had the responsibility to obtain primary insurance coverage, which it obtained from Prime, and was responsible for any cost in excess.

[5] In its Response, Prime explains that "Prime is *not* arguing that Florida Statute § 627.7263 creates coverage where there otherwise is none. Rather, Prime contends that FTL Hub, Inc. ('FTL') and Blanca Holguin are permissive insureds under Penske's policy with Old Republic." ECF No. [34] at 1.

covered by Old Republic's Policy with Penske.

### 4.     The Owner Statute

The Court briefly disposes of Old Republic and Penske's preemptive argument that there

would be no additional obligation for Old Republic to insure FTL arising under the FMVFRL.

Both parties agree that Old Republic does not have a statutory obligation to provide insurance

coverage for FTL. Defendants argue that they had no obligation to insure the 2022 Freightliner

because Penske was not the "owner" of the accident vehicle under Florida law. ECF No. [28] at

7. Plaintiff agrees but argues the lessor may still obtain insurance coverage under Florida

Statutes, § 324.021(9)(b)(1). ECF No. [34] at 4.

Defendants are correct that the FMVFRL does not require Old Republic to insure FTL.

Under Florida Statutes, § 324.151(1)(a), an owner's liability insurance policy:

> must insure the owner named therein, and, … must insure any other person as
> operator using such motor vehicle or motor vehicles with the express or implied
> permission of such owner against loss from the liability imposed by law for
> damage arising out of the ownership, maintenance, or use of such motor vehicle…

Fla. Stat. § 324.151(1)(a). However, the insurers of certain motor vehicle owners are

exempt from having to insure the motor vehicles they own, including lessors who leased a motor

vehicle for one year or longer, such as Penske:

> The lessor, under an agreement to lease a motor vehicle for 1 year or longer which
> requires the lessee to obtain insurance acceptable to the lessor which contains
> limits not less than $100,000/$300,000 bodily injury liability and $50,000
> property damage liability or not less than $500,000 combined property damage
> liability and bodily injury liability, shall not be deemed the owner of said motor
> vehicle for the purpose of determining financial responsibility for the operation of
> said motor vehicle or for the acts of the operator in connection therewith; further,
> this subparagraph shall be applicable so long as the insurance meeting these
> requirements is in effect.

Fla. Stat. § 324.021(9)(b)(1).

Here, the lease for the 2022 Freightliner was 72 months, and the Lease Agreement

required FTL to maintain $1 million in liability coverage. DSMF, ECF No. [27] ¶¶ 10, 12. Even if it *may* insure the vehicle, Penske's insurer is not *required* to insure the operator of the 2022 Freightliner.[6] Old Republic had no responsibility to insure FTL.

Defendants have shown "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law" on their Counterclaim. Fed. R. Civ. P. 56(a). Prime has failed to carry its burden to establish it is entitled to judgment as a matter of law. Accordingly, the Court denies Prime's Motion for Summary Judgment on Count I of its Complaint seeking declaratory judgment that Penske has the burden of providing primary liability coverage to FTL. The Court grants Old Republic's Motion for Summary Judgment on Count I of the Complaint and on its Counterclaim, ECF No. [4] at 33. Defendants are entitled to declaratory judgment on the following:

> A. FTL Hub and Holguin are insureds under the Prime Policy;
> B. Prime has a duty to defend and indemnify Holguin and FTL Hub from the claims asserted in *Bryan, et al., v. Holguin, et al.*, Circuit Court for Miami-Dade County, Florida, Case No. 2023-013684-CA-01 (the "Bryan Action");
> C. FTL Hub and Holguin are not insureds under the Old Republic Policy;
> D. Old Republic and Penske have no duty to defend or indemnify FTL Hub and/or Holguin from the claims asserted in the Bryan Action.

Because the Court grants declaratory judgment on Declarations A-D, Defendants' request for declaratory judgment in the alternative is denied as moot:

> F. If the Court finds Old Republic has a primary duty to defend and indemnify FTL Hub and/or Holguin in the Bryan Action, Defendants seek this Court's Order that its primary obligation is only to the minimum limit of the Florida Motor Vehicle Financial Responsibility Law, Fla. Stat. §324.021, *et seq*. In the alternative, if the Court finds that Old Republic has a duty to defend and

---

[6] However, though Florida Statutes do not obligate the lessor's insurance to insure the lessor if the vehicle is leased for more than a year, it does not obligate the lessee to obtain such insurance either. Indeed, Florida Statutes, § 324.021(9)(b)(1), states:

> The insurance meeting such requirements may be obtained by the lessor or lessee, provided, if such insurance is obtained by the lessor, the combined coverage for bodily injury liability and property damage liability shall contain limits of not less than $1 million and may be provided by a lessor's blanket policy.
> Fla. Stat. 324.021(9)(b)(1).

indemnify FTL or Holguin, Defendants seek an order that its primary obligation is only to the minimum limit of the Florida Motor Vehicle Financial Responsibility Law, Florida Statute 324.021, et seq. ECF No. [26] at 2.

This leaves only Prime and Defendants' Motions for Summary Judgment as to Count II, seeking equitable subrogation. The Court now turns to Count II.

### B. Equitable Subrogation: Count II

In Count II of its Complaint, Prime seeks equitable subrogation from Old Republic and Penske. Specifically, Prime seeks from Penske and Old Republic: (a) costs associated to the indemnification of FTL and Holguin; and (b) the costs associated with Prime's defense of FTL and Holguin in the Bryan Action. ECF Nos. [1-3] ¶¶ 30-41, [22] at 8-10. Defendants explain Old Republic has no responsibility to provide liability coverage to FTL under Florida Statutes and so Plaintiff cannot recover costs. ECF No. [28]. Furthermore, the Parties disagree about the limits of liability for which Old Republic would be liable under the FMVFRL, if it were liable. ECF Nos. [28] at 19-20, [34] at 4-5.

In Florida, the right of equitable subrogation is defined as "'the substitution of one person in the place of another with reference to a lawful claim or right.'" *See In re Cone Constructors, Inc.*, 265 B.R. 302, 306 (M.D.Fla.2001) (citation omitted). "To assert an equitable subrogation claim, the subrogee must establish that: (1) it made a payment to pay off a debt; (2) it did not act as a volunteer; (3) it was not primarily liable for the debt; (4) the subrogee paid off the entire debt of the subrogor; and (5) subrogation would not work any injustice to the rights of a third party." *Amegy Bank Nat. Ass'n v. Deutsche Bank Corp.*, 917 F. Supp. 2d 1228, 1233–34 (M.D. Fla. 2013) (citation omitted). "As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). "The right of subrogation has been sustained in almost every

conceivable type of transaction where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience the other ought to pay." *Rebozo v. Royal Indem. Co.*, 369 So. 2d 644, 646 (Fla. 3rd DCA 1979).

Here, Prime is not entitled to equitable subrogation as Old Republic is not primarily answerable for the indemnification and defense of Holguin and FTL, given that it does not provide insurance coverage for either Holguin and FTL. Since Old Republic is not liable to Prime, the Court need not reach the question of what limit of liability coverage it would be responsible for under Florida Statutes.

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment on Count II of Plaintiff's Complaint seeking equitable subrogation, and grants Defendants' Motion for Summary Judgment on Count II.

Plaintiff's Motion for Summary Judgment is denied as to Count I of the Complaint, seeking declaratory judgment that Penske's insurer, Old Republic, has the burden to provide primary liability coverage to FTL, and denied as to Count II, seeking equitable subrogation for costs associated with the indemnification of FTL and Holguin and for Prime's defense of FTL and Holguin in the Bryan Action, ECF No. [22]. Defendants' Motion for Summary Judgment, ECF Nos. [26], [28], is granted as to Counts I and II, and as to Declarations A-D of its Counterclaim. Defendants' Motion for Summary Judgment as to Declaration F is denied as moot.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment, **ECF No. [22]**, is **DENIED**;

2. Defendants' Cross-Motion for Summary Judgment, **ECF Nos. [26], [28]**, is **GRANTED in part** and **DENIED in part** as follows:

    a.  Defendants' Cross-Motion for Summary Judgment, **ECF Nos. [26], [28]**, is **GRANTED** as to Count I of the Complaint, where Plaintiff seeks declaratory judgment, and Defendants' Counterclaim, where Defendant seeks declaratory judgment.

    b. The Court **DECLARES** as follows:

        A. FTL Hub and Holguin are insureds under the Prime Policy;

        B. Prime has a duty to defend and indemnify Holguin and FTL Hub from the claims asserted in *Bryan, et al., v. Holguin, et al*., No. 2023-013684-CA-01 (Fla. Cir. Ct. filed Mar. 23, 2023);

        C. FTL Hub and Holguin are not insureds under the Old Republic Policy;

        D. Old Republic and Penske have no duty to defend or indemnify FTL Hub and/or Holguin from the claims asserted in the Bryan Action.

    c.  Defendants' Cross-Motion for Summary Judgment, **ECF No. [26]** at 2, is **DENIED** as **MOOT** as to Declaration F of Defendants' Counterclaim, *see* ECF No. [4] at 33;

    d.  Defendants' Cross-Motion for Summary Judgment, **ECF Nos. [26], [28]**, is **GRANTED** as to Count II, where Plaintiff seeks equitable subrogation.

3. The Clerk of Court shall **CLOSE** this case for administrative purposes only.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

24

Case No. 23-cv-22427-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida on April 22, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record